## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| CARE INVESTMENT TRUST, INC., <br><br>          Plaintiff, <br><br>     -v.- <br><br> JEAN-CLAUDE SAADA, *et al.*, <br><br>          Defendants. | No.  3:09-cv-02256-K |
| JEAN-CLAUDE SAADA, *et al.*, <br><br>          Counterclaim Plaintiffs, <br><br>     -v.- <br><br> CARE INVESTMENT TRUST, INC., *et al.*, <br><br>          Counterclaim and Third-Party <br>          Defendants. | |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
## TO DISMISS COUNTS IV-V OF THE COMPLAINT

Bobby R. Burchfield (*pro hac vice*)
Jason A. Levine (*pro hac vice*)
McDERMOTT WILL & EMERY LLP
600 Thirteenth Street, N.W.
Washington, D.C. 20005-3096
Tel.  202.756.8000
Fax. 202.756.8087

Ernest E. Figari, Jr.
Texas Bar No. 06983000
FIGARI & DAVENPORT, L.L.P.
3400 Bank of America Plaza
901 Main Street, Suite 3400
Dallas, Texas 75202-3796
Tel.  214.939.2000
Fax  214.939.2090

*Attorneys for Plaintiff and Counterclaim Defendant*
*Care Investment Trust, Inc.; and for Third-Party*
*Defendants CIT Healthcare, LLC; Flint D.*
*Besecker; ERC Sub, LP; and ERC Sub LLC*

Dated:  March 5, 2010

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. ii

INTRODUCTION ............................................................................................... 1

STATEMENT OF THE CASE ............................................................................ 2

STANDARD OF REVIEW ................................................................................. 5

ARGUMENT ...................................................................................................... 6

I.    TEXAS LAW, NOT NEW YORK LAW, GOVERNS COUNTS IV-V ........................ 6

    A.    Contractual Choice-of-Law Provisions Do Not Extend to Tort Claims. ............... 6

    B.    Texas Bears the Most Significant Relationship to Care's Claims. ....................... 7

    C.    Counts IV and V of Care's Complaint Assert Tort Claims ................................ 8

II.   COUNT IV OF THE COMPLAINT STATES A CLAIM FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACT ............................................. 11

    A.    Count IV Sufficiently Alleges Independently Tortious Conduct ....................... 11

    B.    Defendants' Conduct Qualifies as "Interference" Under Texas Law ................. 13

III.  COUNT V STATES A CLAIM FOR BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING .......................................................................... 14

    A.    Defendants Owed Care a Duty of Good Faith and Fair Dealing ....................... 14

    B.    The Mere Fact That Defendants' Actions Are Based Upon Supposed Contractual Rights Is Irrelevant on a Motion To Dismiss ................................ 15

    C.    Defendants Interfered With Specific Contractual Benefits. ............................. 15

CONCLUSION ................................................................................................... 16

# TABLE OF AUTHORITIES

## CASES

*Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566 (2d Cir. 2005)..................12

*Ash v. Hack Branch Distributing Co.*, 54 S.W.3d 401
   (Tex. App.—Waco 2001, pet. denied) .................................................11

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ...............................................5

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................5

*Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719 (5th Cir. 2003).................7

*Caton v. Leach Corp.*, 896 F.2d 939 (5th Cir.), *reh'g denied*, 902 F.2d 957
   (5th Cir. 1990)...........................................................6, 8, 9, 14

*Crim Truck & Tractor Co. v. Navistar Intern. Transp. Corp.*,
   823 S.W.2d 591 (Tex. 1992) ......................................................2, 8, 10

*Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414 (Tex. 1984).....................................7

*Fitz-Gerald v. Hull*, 237 S.W.2d 256 (Tex. 1951)...........................................8, 14

*Fontenot v. Upjohn*, 780 F.2d 1190 (5th Cir.1986) .......................................12, 15

*Hubbard Chevrolet Co. v. General Motors Corp.*, 682 F. Supp. 873 (S.D. Miss. 1987),
   *aff'd*, 873 F.2d 873 (5th Cir. 1989).............................................13

*Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202 (Tex. 2000).............................7

*Jones v. Bock*, 549 U.S. 199 (2007)................................................1, 5, 11, 15

*Kelley v. Bluff Creek Oil Company*, 309 S.W.2d 208 (Tex. 1958)............................12

*Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509 (Tex. 1942) .............13

*MacDonald v. Follett*, 180 S.W.2d 334 (Tex. 1944) ......................................9, 14

*Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400 (5th Cir. 2004) ...........................6

*Montgomery County v. Fuqua*, 22 S.W.3d 662 (Tex. App.—Beaumont 2000, pet. denied)........12

*Red Roof Inns, Inc. v. Murat Holdings, L.L.C.*, 223 S.W.3d 676
   (Tex. App.—Dallas 2007, pet. denied) ...........................................6

*Schiller v. Elick*, 240 S.W.2d 997 (Tex. 1951)...........................................9, 14

*Smith v. EMC Corp.*, 393 F.3d 590 (5th Cir. 2004)......................................................................6

*Steir v. Reading & Bates Corp.*, 992 S.W.2d 423 (Tex. 1999), *cert denied*,
    528 U.S. 1075 (2000) .............................................................................................................6

*Stokes v. Gann*, 498 F.3d 483 (5th Cir. 2007) .............................................................................5

*Thigpen v. Locke*, 363 S.W.2d 247 (Tex. 1962).....................................................................9, 15

*Thur v. IPCO Corp.*, 173 A.D.2d 344 (N.Y. App. Div. 1991).....................................................12

*U.S. Reinsurance Corp. v. Humphreys*, 240 A.D.2d 264 (N.Y. App. Div. 1997).......................12

*Union Pacific Fuels, Inc. v. Johnson*, 909 S.W.2d 130
    (Tex. App.—Houston [14th Dist.] 1995, no writ) ................................................................12

*Verkin v. Melroy* 699 F.2d 729 (5th Cir. 1983) ..........................................................................13

*Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711 (Tex. 2001)....................................................8

**RULES**

Fed. R. Civ. P. 12(b)(6).............................................................................................................1, 5

**OTHER AUTHORITIES**

Restatement (Second) of Conflict of Laws §§ 6, 145 (1971)........................................................7

## INTRODUCTION

Advancing arguments that improperly rely on New York law, and assuming incorrectly that a fact-based affirmative defense of "good faith" is dispositive, Defendants seek to dismiss the claims for tortious interference and breach of the duty of good faith and fair dealing that are asserted in Counts IV and V of the Complaint filed by Care Investment Trust, Inc. ("Care"). Defendants' arguments are unavailing and the Motion to Dismiss must be denied.

As a threshold matter, many of Defendants' contentions are inapplicable because they are based upon the law of New York, rather than Texas.  *See* Mot. to Dismiss at 7-11.  Tellingly, Defendants perform no choice-of-law analysis, and instead assume that the choice-of-law clauses in two of the parties' contracts may compel the application of New York law.  *See id.* at 5.  On the contrary, because Counts IV and V of the Complaint assert causes of action sounding in *tort*, rather than contract, the contractual choice-of-law clauses are inoperative.  Texas has the most significant connection to these causes of action, so the law of Texas—not New York—applies. *See infra* Part I.  Accordingly, Defendants' numerous arguments premised solely on New York law are irrelevant.

Defendants also advance the defense that they acted in good faith rather than tortiously. *See* Mot. to Dismiss at 6-8, 10-14.  Yet Defendants apparently disregard the standard of review under Federal Rule of Civil Procedure 12(b)(6), as well as the burden of proof for affirmative defenses such as "good faith."  *See infra* Parts II.A, III.B.  In deciding a Rule 12(b)(6) motion, the court is to rely solely upon the factual allegations of the complaint.  *See Jones v. Bock*, 549 U.S. 199, 215 (2007).  An affirmative defense may support dismissal under Rule 12(b)(6) only if the allegations of the complaint itself "suffice to establish that ground," not simply based upon "the nature of the [affirmative defense] in the abstract."  *Id.*  This is consistent with the fact that Defendants bear the burden of proving their "good faith" defense.  For this reason, they cannot

evade Counts IV and V through counter-assertions of fact, because these claims rest upon well-pleaded allegations of bad faith misconduct and resultant damages.  Complaint ¶¶ 35-42, 63-75.

In addition, Defendants erroneously contend that they owe no duty of good faith and fair dealing to Care because Texas courts do not generally recognize such a duty, and because the parties did not have a "special relationship" that would independently give rise to the duty.  *See* Mot. to Dismiss at 14-16.  In so arguing, Defendants downplay the significance of their confidential relationship with Care, established by the Put Agreement (Complaint Ex. B ¶ 72), but by its plain terms—as pleaded in the Complaint—it articulates "an element of personal trust and confidence above and beyond that which is ordinarily contemplated by parties to contracts." *Crim Truck & Tractor Co. v. Navistar Intern. Transp. Corp.*, 823 S.W.2d 591, 595-96 (Tex. 1992).  This is sufficient for a "special relationship" between the parties, which imposed a duty of good faith and fair dealing on Defendants as a matter of law.  *Id. See infra* Part I.C.

## STATEMENT OF THE CASE

In view of Defendants' distorted portrayal of the Complaint, Care summarizes its allegations pertaining to Counts IV and V for the Court's reference.  In sum, these causes of action arise out of Defendants' efforts to interfere, tortiously and in bad faith, in the legitimate business dealings of Care based upon the assertion of concocted and facially unreasonable rights of "approval."[1]  Defendants undertook their obstructionist actions in the pursuit of financial benefits for themselves, to the detriment of Care and its public shareholders.  *See generally* Complaint ¶¶ 35-42.

---

[1] Care explains at length why Defendants' purported contractual rights are non-existent as a matter of law in its Complaint (¶¶ 43-62) and in its Motion to Dismiss Counterclaims and Third-Party Complaint, which was filed simultaneously with this Brief.  *See* Mem. of Law in Support of Mot. to Dismiss Counterclaims and Third-Party Complaint, Part I (March 5, 2010).

Notwithstanding the many lengthy contracts executed by the parties to consummate their transaction, it can be described in simple terms. Mr. Saada owned numerous medical office buildings. In 2007, he sought to sell a large stake in these buildings while retaining managerial control of them. Mr. Saada also sought to protect himself in the event that the entity with which he dealt directly (here, ERC Sub, L.P.) were sold, and to provide himself with an escape hatch in the event that any ultimate parent entity (here, Care) underwent a change of control. Care, in turn, sought, through subsidiaries, to obtain a stream of revenue from these medical office buildings without managerial responsibility for the properties. Care also preferred a transaction that would not restrict its ability to manage itself, so it placed its ownership interest in an indirect subsidiary (here, ERC Sub, L.P.). The parties satisfied their interests through the transaction at issue in this case.

On December 31, 2007, Care and its subsidiaries ERC Sub LLC and ERC Sub, L.P. (the "Care Parties") executed several detailed agreements with Defendants. ERC Sub, L.P. purchased from Mr. Saada an 85% limited partner interest in eight of his limited liability entities that own nine medical office buildings ("Owners"). Mr. Saada received $72.4 million, including the value of certain "Units" in the ERC Sub, L.P. limited partnership. *See* Complaint Ex. K at page A-1 (ERC Sub Agreement) and Ex. L ¶ 2.2 (Purchase Agreement); *see also* Complaint ¶¶ 24-30. To effectuate this investment and provide for additional rights and obligations, the Purchase Agreement (¶ 2.1) required the execution of several other contracts at closing, including eight identical Amended and Restated Agreements of Limited Partnership ("Saada LP Agreements") with the eight Owners, making ERC Sub, L.P. an 85% limited partner. *See* Complaint Exs. C–J.

In addition, Defendants also simultaneously entered into a Put Agreement with Care, ERC Sub LLC, and ERC Sub, L.P. *See* Complaint Ex. B; *see also* Complaint ¶¶ 24-30. In

-3-

relevant part, the Put Agreement provides that, in the event of a "change in control" of Care or either of its ERC subsidiaries, Defendants would have the right to sell back their remaining 15% interests in the Owners. Complaint Ex. B. ¶ 1.1. The Put Agreement also contains a detailed confidentiality provision, requiring Defendants to keep confidential any information pertaining to a potential "change of control" transaction received from Care as the trigger for exercise of the "put option." *Id.* ¶ 1.1(b). Pursuant to this covenant of confidentiality, Defendants acknowledged that their disclosure of covered information would cause "irreparable harm" to Care and would support a suit for injunctive relief. *Id.*; *see also* Complaint ¶¶ 71-75.

On May 8, 2009, pursuant to its obligations under the Put Agreement, Care notified Defendants that it had signed a term sheet providing for the acquisition by an unaffiliated third party of over 50% of the voting stock of Care ("Proposed Transaction"). *See* Complaint ¶ 31. Several days later, Defendants filed a Petition in Texas state court against Care and others seeking a declaratory judgment that under the Saada LP Agreements—to which Care is *not* a party—Care is barred from entering into the Proposed Transaction absent advance written approval of Defendants. *Id.* ¶ 32. Although Defendants later withdrew their Petition, Mr. Saada—acting on his own behalf and on behalf of the other Defendants—engaged in a campaign to block the Proposed Transaction, insisting to directors and executives of Care that the transaction could not proceed without his approval. *Id.* ¶ 36. Mr. Saada further stated that he would refuse to approve the Proposed Transaction or any other sale of Care, and would take legal action to prevent its consummation. *Id.* Mr. Saada took these actions with full knowledge that they threatened the viability of the Proposed Transaction, for the specific purpose of obtaining leverage over Care to advance his personal financial interests at Care's expense. *Id.* ¶ 37. Specifically, Mr. Saada sought to disrupt and interfere with the Proposed Transaction in an

-4-

effort to force Care to sell back to him ERC Sub, L.P.'s 85% partnership interest at an extraordinarily discounted price—an economically inferior and unacceptable transaction. *Id.* Mr. Saada also sought to position himself as an alternative purchaser of Care itself—also at a very low price—if his tactics succeeded in preventing the Proposed Transaction. *Id.* As is was required to do, Care informed its counterparty of Mr. Saada's position. *Id.* ¶ 36.

Unfortunately, Mr. Saada's obstructionist acts caused significant negotiating delays and posed undesirable deal complications, which ultimately caused the Proposed Transaction not to be consummated. *Id.* ¶ 38. This caused Care to lose the benefit of hundreds of millions of dollars of value for its public shareholders. *Id.* ¶ 36. Further, Mr. Saada's intransigence and threats of further litigation have greatly impeded Care's ability to engage in legitimate business negotiations about the potential sale or liquidation of Care. *Id.* ¶ 42.

## STANDARD OF REVIEW

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), federal courts accept "all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiffs." *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007). Dismissal is not appropriate if a plaintiff's factual allegations raise a right to relief "above the speculative level" and "state[s] a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has factual plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Further, when considering an affirmative defense at the motion to dismiss stage, courts look only to the allegations in the complaint to determine whether they suffice to establish the affirmative defense. *Jones*, 549 U.S. at 215. If they do not, then the claim is not to be dismissed. *Id.*

<u>ARGUMENT</u>

**I.     TEXAS LAW, NOT NEW YORK LAW, GOVERNS COUNTS IV-V.**

As a threshold matter, Defendants observe that Care's allegations underlying Counts IV and V implicate two contracts with choice-of-law clauses citing the law of New York.  Mot. to Dismiss at 5.  Accordingly, Defendants assert numerous arguments for the dismissal of Counts IV and V under the law of New York, often with the caveat that Texas courts have not addressed the point.  *Id*. at 8, 10 & nn. 1, 3.  Defendants' attacks on Counts IV and V based on New York law are unavailing.  The choice-of-law clauses upon which they rely do not extend to tort claims, and Texas choice-of-law principles dictate that Texas law governs Counts IV and V.

**A.     Contractual Choice-of-Law Provisions Do Not Extend to Tort Claims.**

"In making a choice of law determination, a federal court exercising diversity jurisdiction must apply the choice of law rules of the forum state."  *Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 403 (5th Cir. 2004).  Although Texas courts typically enforce contractual choice-of-law provisions, *Smith v. EMC Corp.*, 393 F.3d 590 (5th Cir. 2004), they recognize that such provisions do *not* govern *all* causes of action between parties to a contract.  *Caton v. Leach Corp.*, 896 F.2d 939, 943 (5th Cir.), *reh'g denied*, 902 F.2d 957 (5th Cir. 1990).  On the contrary, such provisions are generally inapplicable to *tort* claims between the parties.  *Steir v. Reading & Bates Corp.*, 992 S.W.2d 423, 433 (Tex. 1999) (holding that a choice-of-law provision stating that an agreement "shall be interpreted and enforced in accordance" with a particular state's law does *not* encompass tort claims between the parties), *cert denied*, 528 U.S. 1075 (2000); *Red Roof Inns, Inc. v. Murat Holdings, L.L.C.*, 223 S.W.3d 676, 684-85 (Tex. App.—Dallas 2007, pet. denied) (same; limiting choice-of-law provision to plaintiff's contract claims, and not to its tort claims for tortious interference with contract, fraud, negligent misrepresentation, and breach of fiduciary duty).

Accordingly, although the Purchase Agreement and the Put Agreement contain choice-of-law provisions stating that each agreement "shall be *governed* by and *interpreted*, *construed* and *enforced* in accordance with the Laws of the State of New York" (Complaint Ex. B at 7; Ex. L at 46), these provisions—as a matter of law and by their very terms—relate to contract claims only, and do *not* extend to tort claims arising among the parties.[2]

### B.    Texas Bears the Most Significant Relationship to Care's Claims.

Where, as here, no contractual choice-of-law provision applies, Texas courts apply the "most significant relationship" test to determine choice of law issues. *See Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 727 (5th Cir. 2003) (citing *Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 205 (Tex. 2000)); *see also Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984); Restatement (Second) of Conflict of Laws §§ 6, 145 (1971).  Under this test, in tort cases Texas courts look to: (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered.  S*ee Hughes Wood Prods.*, 18 S.W.3d at 205; Restatement (Second) of Conflict of Laws § 145.

Texas plainly has the most significant relationship to Care's claims in Counts IV and V, which—as explained below in Part I.C.—sound in tort.  Most of the Defendants are citizens of the State of Texas, continuously transact business there, and purposefully avail themselves of the State of Texas.  *See* Complaint ¶¶ 7-20, 22.  A majority of the properties at issue are located in Texas as well.  *Id.* ¶ 24.  Further, Mr. Saada is a Texas citizen and resident, and he signed all of

---

[2] Any attempt by Defendants to rely on the choice-of-law provisions in the Saada LP Agreements (*see* Complaint Exs. C-J), to argue for the application of any other state's law would also fail.  Each of these Agreements contains a nearly identical choice-of-law provision that is expressly limited to the interpretation, construction, and enforcement of the Agreements themselves, and *not* to tort claims brought by one party against the other.  *See id.* ¶ 15.2.

the Agreements between the parties on behalf of Defendants.  *Id.* ¶ 27.  Perhaps most telling, in

May 2009, Defendants filed a Petition in *Texas state court* seeking a declaration that Care was

barred from undertaking the Proposed Transaction without obtaining their advance written

approval—the very issue that Care is litigating in this case.  *Id.*  ¶ 32.  Accordingly, Defendants

cannot seriously dispute that Texas has the most significant relationship to Counts IV and V, or

that Texas law governs these claims.

### C.    Counts IV and V of Care's Complaint Assert Tort Claims.

Care asserts in Counts IV and V, respectively, that Defendants tortiously interfered with

Care's prospective contract with a third party—the Proposed Transaction—and also breached the

duty of good faith and fair dealing that arose out of the parties' "special relationship" of

confidentiality.  *See* Complaint ¶¶ 35-42, 63-75.  Both of these causes of action sound in tort, and

accordingly are governed by Texas law.

It is undisputed, and axiomatic, that a claim for tortious interference with prospective

contractual relations sounds in tort.  *See*, *e.g.*, *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711,

712-13 (Tex. 2001) ("Texas, like most states, has long recognized a tort cause of action for

interference with a prospective contractual or business relation . . . .").  Likewise, violation of the

covenant of good faith and fair dealing also gives rise to a tort claim (*not* a contract claim) if a

"special relationship" exists between the parties.  *Caton*, 896 F.2d at 943, 948.  One such special

relationship is a confidential relationship between the parties.  *See*, *e.g.*, *Crim Truck & Tractor

Co.*, 823 S.W.2d at 595-96 (holding that "an element of personal trust and confidence above and

beyond that which is ordinarily contemplated by parties to contracts" is a cognizable "special

relationship"); *Fitz-Gerald v. Hull*, 237 S.W.2d 256, 261 (Tex. 1951) (finding tort-based duty of

good faith and fair dealing when a relationship exists between the parties "where one person

trusts in and relies upon another, whether the relation is a moral, social, domestic or merely personal one").

Further, the Fifth Circuit, applying Texas law in *Caton*, elaborated upon the difference between (1) a *tortious* claim for breach of the duty of good faith and fair dealing arising out of a special relationship between the parties; and (2) breach of the implied covenant of good faith and fair dealing, absent a special relationship, as a pure matter of *contract*. *See* 893 F.3d at 943. Here, Care pleaded that its claim for breach of good faith and fair dealing arises out of its confidential—and "special"—relationship with Defendants. *See* Complaint ¶¶ 71-75. For this reason, the claim asserted in Count V sounds in tort, not contract.[3]

Moreover, under Texas law the existence of a confidential relationship is generally deemed an issue of *fact*, not law, and accordingly is not amenable to a motion to dismiss for failure to state a claim. *See Schiller v. Elick*, 240 S.W.2d 997, 1000 (Tex. 1951); *MacDonald v. Follett*, 180 S.W.2d 334, 339 (Tex. 1944). The issue becomes one of law only if no evidence whatsoever exists to support the relationship. *See Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex. 1962). Here, Care has set forth particularized allegations supporting the existence of a confidential relationship between itself and Defendants, for the benefit of Care. As Care alleged in its Complaint, the Put Agreement provided that information furnished by Care to the Defendants in the event of a "change of control" transaction is confidential and proprietary in nature. Complaint ¶ 72 & Ex. B ¶ 1.1. Defendants, in turn, agreed to maintain such information

---

[3] This distinction set forth by *Caton* is important in assessing the parties' opposing claims for breach of the duty of good faith and fair dealing. While Care's claim (Count V) sounds in tort because it is based on the existence of a special relationship between the parties, Defendants' good faith claims sound in contract because they are not based on a special relationship between the parties. *See* Counterclaims and Third-Party Complaint, Counts Three and Four (Jan. 27, 2010) (Dkt. No. 24). This distinction affects the choice of law analysis for each claim. *See Caton*, 896 F.2d at 943 (applying Texas law to tort-based good faith duty claim because Texas had most significant connection to the claim, but applying California law to contractual good faith duty claim because contract called for application of California law). Accordingly, the application of Texas law to Care's good faith duty claim, but New York law to Defendants' good faith duty claims, is appropriate.

in confidence, and recognized that its unauthorized disclosure would result in *irreparable harm* to Care. *Id.* Thus pleaded, this relationship gave rise to a duty of good faith and fair dealing— owed by Defendants to Care (and *not* vice-versa)—that is enforceable as a tort.

Defendants nonetheless describe the confidentiality provisions of the Put Agreement as mere boilerplate that is ineffective to create a "special relationship." *See* Mot. to Dismiss at 15. To the contrary, the Texas Supreme Court requires only contractual language that articulates "an element of personal trust and confidence above and beyond that which is ordinarily contemplated by parties to contracts." *Crim Truck & Tractor Co.*, 823 S.W.2d at 595-96 (distinguishing generic non-assignment provision from one establishing a confidential relationship). Indeed, Defendants' effort to trivialize the confidentiality provision in the Put Agreement ignores key facts that differentiate it from an ineffective contract provision of the sort at issue in *Crim Truck & Tractor*. First, the Put Agreement expressly provides that the information at issue is "confidential and proprietary in nature," and that each party "agrees that at all times it will maintain the confidentiality" of that information. *See* Complaint Ex. B ¶ 1.1(b). Second, the provision expressly states that disclosure of this information would constitute a breach and "would result in irreparable harm to the CIT companies [including Care] . . . ." *Id.* Finally, the provision states that Care would be entitled to an injunction to prohibit Defendants from engaging in any breach or anticipated breach. *Id.* Such detailed language is hardly the sort of boilerplate language found wanting in *Crim Truck & Tractor*. Care placed its trust in Defendants not to harm it through the misuse of confidential information. This is more than ample basis—at least at the pleading stage—for Care's allegation that the Put Agreement created a "special relationship" between the parties.

## II.    COUNT IV OF THE COMPLAINT STATES A CLAIM FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACT.

The elements of a cause of action for tortious interference with a prospective contract under Texas law are: (1) a reasonable probability that the parties would have entered into a contractual relationship; (2) an intentional and malicious act by the defendant that prevented the relationship from occurring with the purpose of harming the plaintiff; (3) lack of privilege or justification for the act; and (4) actual harm or damage incurred as a result of the defendant's interference. *Ash v. Hack Branch Distributing Co.*, 54 S.W.3d 401, 414-15 (Tex. App.—Waco 2001, pet. denied). Texas courts hold that the defendant's conduct must also be independently tortious or unlawful. *Sturges*, 52 S.W.3d at 713. Care has well pleaded each of these elements.

### A.    Count IV Sufficiently Alleges Independently Tortious Conduct.

Defendants first argue that Care's tortious interference claim should be dismissed because it fails to allege that Defendants committed conduct that was independently tortious. *See* Mot. to Dismiss at 6-8. As Care explained at length above, however, its companion claim in Count V—that Defendants breached their duty of good faith and fair dealing—sounds in tort as a matter of Texas law. *See supra* Part I.C.

Defendants also assert that they cannot have committed "tortious interference" because they merely engaged in good faith efforts to assert a legally protected interest—effectively proffering a defense of justification. *Ash*, 54 S.W.3d at 414-15. *See* Mot. to Dismiss at 6-8. This argument is premature and defective. As noted above (pages 1, 5), courts considering a Rule 12(b)(6) motion to dismiss look only to factual allegations contained in the complaint, and a defendant's mere assertions of fact in support of an affirmative defense are insufficient to validate the defense. *See Jones*, 549 U.S. at 215. For this reason, Defendants' professions of good faith are irrelevant at the Rule 12(b)(6) stage.

-11-

Care specifically pleaded in its Complaint that Defendants engaged in a series of willful, bad faith actions designed to: (1) bar Care from undertaking a transaction that, if consummated, would have conferred hundreds of millions of dollars of value on its shareholders; and (2) force Care instead to engage in an economically inferior transaction that would unilaterally benefit Defendants, while simultaneously harming Care and its shareholders. *See* Complaint ¶¶ 35-42, 63-75. Taken as true, these well-pleaded allegations are ample to put at issue Defendants' bad faith. At most, Defendants' assertions to the contrary create a dispute of fact over their motives, which renders dismissal inappropriate. *See Fontenot v. Upjohn*, 780 F.2d 1190, 1194 (5th Cir.1986) (holding that the movant with the burden of proof "must establish *beyond peradventure* all of the essential elements of the claim or defense to warrant judgment in his favor") (emphasis added). This outcome is consistent with Texas's longstanding recognition that affirmative defenses, by themselves, are not grounds for dismissing a plaintiff's claim on the pleadings. *See Montgomery County v. Fuqua*, 22 S.W.3d 662, 669 (Tex. App.—Beaumont 2000, pet. denied) ("Affirmative defenses are 'pleas in bar,' and do not provide a justification for summary dismissal on the pleadings.") (citing *Kelley v. Bluff Creek Oil Company*, 309 S.W.2d 208, 214-15 (Tex. 1958) and *Union Pacific Fuels, Inc. v. Johnson*, 909 S.W.2d 130, 134 (Tex. App.—Houston [14th Dist.] 1995, no writ).

Importantly, all of the cases Defendants cite to support their argument for a "good faith" justification (Mot. to Dismiss at 7) were decided at the summary judgment stage, *not* on motions to dismiss. *See Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 567 (2d Cir. 2005) (appellate review of motion for summary judgment); *U.S. Reinsurance Corp. v. Humphreys*, 240 A.D.2d 264, 264 (N.Y. App. Div. 1997) (same); *Thur v. IPCO Corp.*, 173 A.D.2d 344, 345 (N.Y. App. Div. 1991) (same). Further, they also apply the law of New York,

*not* Texas, and are inapplicable in any event. *See supra* Part I. Accordingly, the defense of a "good faith" justification is not a viable ground for dismissal of Count IV.

### B. Defendants' Conduct Qualifies as "Interference" Under Texas Law.

Defendants further contend that Care's tortious interference claim fails because the acts of interference were directed at Care itself, rather than the third party with which it had prospective contractual relations. *See* Mot. to Dismiss at 9-10. This argument is unavailing.[4]

In *Verkin v. Melroy*, the Fifth Circuit, applying Texas law, held that the defendant in a tortious interference cause of action need not know the details of, or parties to, a prospective contractual relationship. 699 F.2d 729, 733 (5th Cir. 1983); *see also Hubbard Chevrolet Co. v. General Motors Corp.*, 682 F. Supp. 873, 878 (S.D. Miss. 1987), *aff'd*, 873 F.2d 873 (5th Cir. 1989). On the contrary, "all that is necessary is that the tortfeasor know that some party or parties had a prospective contractual relationship." *Verkin*, 699 F.2d at 733. Given that Texas law does not require that the defendant even know the identity of the third party with whom the plaintiff dealt, it logically follows that the defendant need not have directed its interference toward the potentially unknown third party. Here, Defendants concede that they knew about and sought to block the Proposed Transaction subject to their purported rights. *See* Answer ¶¶ 36, 40. Defendants even filed a Petition in Texas state court—on the public docket—that was based upon (and revealed) information from Care about the Proposed Transaction in an effort to block its consummation. *See* Complaint ¶¶ 31-33.

Care, in negotiating with its counterparty to the Proposed Transaction, owed it a duty to disclose *all* material information related to the transaction. *See Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 513-14 (Tex. 1942). There can be no doubt that Defendants'

---

[4] Defendants premise this argument on New York law, but *Texas* law governs Count IV. *See supra* Part I.

actions aimed at interfering with the Proposed Transaction, including threats of litigation and a Petition filed in Texas state court, rose to a level requiring disclosure by Care. Indeed, Care alleges in its Complaint that it did, in fact, disclose Defendants' obstructionist position and threats to its counterparty. *See* Complaint ¶ 36. It is disingenuous for Defendants to imply now that Mr. Saada—a sophisticated and highly successful Texas businessman represented by experienced counsel—was not aware of Care's duty to disclose, and did not know that Care would communicate his position to its counterparty. Accordingly, Defendants' misuse of information obtained pursuant to their confidential and "special" relationship with Care was tortious interference even if Mr. Saada personally made his threats only to Care itself.

## III.    COUNT V STATES A CLAIM FOR BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING.

Defendants contend that Care's claim for breach of the duty of good faith and fair dealing (Count V) must be dismissed because they: (1) do not owe Care this duty; (2) acted in good faith; and (3) did not interfere with any specific contractual benefits of Care. *See* Mot. to Dismiss at 10-16. Defendants' first two arguments fail for the reasons discussed above; the final argument, even if it were true, is a factual defense not relevant on a motion to dismiss.

### A.    Defendants Owed Care a Duty of Good Faith and Fair Dealing.

As explained above (Part I.C), under Texas law, the existence of a "special relationship" between two parties gives rise to a corresponding duty of good faith and fair dealing between them. *See Caton*, 896 F.2d at 943, 948. One such special relationship is a "confidential relationship." *See Fitz-Gerald*, 237 S.W.2d at 261; *MacDonald*, 180 S.W.2d at 339. Texas courts generally treat the existence of a confidential relationship as an issue of *fact* rather than law. *See Schiller*, 240 S.W.2d at 1000; *MacDonald*, 180 S.W.2d at 339. Indeed, the issue is treated as one of law only if no evidence whatsoever supports the existence of such a

-14-

relationship. *Thigpen*, 363 S.W.2d at 253. As discussed, Care pleaded the factual predicates for a confidential relationship with Defendants in detail. *See supra* Part I.C.

### B.    The Mere Fact That Defendants' Actions Are Based Upon Supposed Contractual Rights Is Irrelevant on a Motion To Dismiss.

As with Care's tortious interference claim, Defendants attempt to evade the claim based upon the covenant of good faith and fair dealing by arguing that they were innocently "acting in [their] own legitimate economic self-interest consistent with [their] view of [their] contractual rights." Mot. to Dismiss 11.[5]  Once again, Defendants mistakenly assume that raising a "good faith" affirmative defense at the motion to dismiss stage will establish its validity as a matter of law and warrant dismissal of Count V. As explained above (at pages 11-12), courts look only to the allegations in the complaint to determine whether they are sufficient to survive dismissal under Rule 12(b)(6), and will credit an affirmative defense only if "the allegations *in the complaint* suffice to establish that ground, not on the nature of the [affirmative defense] in the abstract." *Bock*, 549 U.S. at 215. As discussed, Care has pleaded at length that Defendants engaged in a series of deliberate, bad-faith acts to interfere with the Proposed Transaction and exert improper financial leverage over Care. *See* Complaint ¶¶ 35-42, 71-75. Given these allegations, Defendants' professions of good faith are irrelevant under Rule 12(b)(6), and at most create disputes of fact that *preclude* dismissal of Count V. *Fontenot*, 780 F.2d at 1194.

### C.    Defendants Interfered With Specific Contractual Benefits.

Defendants further contend that Count V fails because Care cannot point to any interference with specific contractual benefits, another argument premised almost exclusively— and improperly—on New York law. *See* Mot. to Dismiss at 11-14. Care agrees that Texas law

---

[5] Again, Defendants' reliance on New York law for this argument is unavailing because Texas law governs here. *See supra* Part I.

limits parties' contractual rights to those actually bargained for pursuant to contract.  As the Complaint alleges, however, Count V asserts Defendants' breach of the duty of good faith that flows from the "special relationship" established by the Put Agreement's confidentiality provision.  Defendants received information about the Proposed Transaction pursuant to this provision, but then used the information *against* Care's interests for bad-faith purposes.  As explained above (Part II.B), the fact that Defendants directly confronted only Care, rather than its negotiating counterparty, is beside the point.

Finally, Defendants cannot legitimately argue—again, almost exclusively based on inapplicable New York law—that Care's claim based upon the duty of good faith and fair dealing fails merely because Defendants' acts were premised on their purported readings of contracts *other than* the Put Agreement.  *See* Mot. to Dismiss at 11-14.  As explained above (pages 11-12), the defense of justification is unavailing at the Rule 12(b)(6) stage.

## CONCLUSION

For the foregoing reasons, Care urges the Court to deny Defendants' motion to dismiss Counts IV and V of the Complaint.

<div style="margin-left:40%">Respectfully submitted,

/s/Ernest E. Figari, Jr.</div>

Bobby R. Burchfield (*pro hac vice*)
Jason A. Levine (*pro hac vice*)
MCDERMOTT WILL & EMERY LLP
600 Thirteenth Street, N.W.
Washington, D.C. 20005-3096
Tel.  202.756.8000
Fax. 202.756.8087

Ernest E. Figari, Jr.
FIGARI & DAVENPORT, L.L.P.
3400 Bank of America Plaza
901 Main Street, Suite 3400
Dallas, Texas 75202-3796
Tel.  214.939.2000
Fax  214.939.2090

*Attorneys for Plaintiff and Counterclaim Defendant Care Investment Trust, Inc.; and for Third-Party Defendants CIT Healthcare, LLC; Flint D. Besecker; ERC Sub, LP; and ERC Sub LLC*

Dated:  March 5, 2010

-16-

## CERTIFICATE OF SERVICE

I, Lance V. Clack, hereby certify that on this day I caused a true and correct copy of the foregoing Plaintiff's Opposition to Defendants' Motion to Dismiss Counts IV-V of the Complaint to be served upon all counsel named below by Electronic Case Filing using the CM/ECF system, which will send automatic notification of the filing to the following:

Richard A. Rosen
James L. Brochin
PAUL WEISS RIFKIND
    WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, N.Y. 10019

Robert M. Cohan
William D. Ellerman
JACKSON WALKER L.L.P.
NationsBank Plaza
901 Main Street, Suite 6000
Dallas, TX 75202

*Attorneys for Defendants and Counterclaim Plaintiffs Jean-Claude Saada; Cambridge Onalp, Inc.; Cambridge Nassau Bay GP LLC; 6000 Greenville, Inc.; Allen MOP, Inc.; 5280 Medical Drive, Inc.; Cambridge Gorbutt MOB, Inc.; Cambridge Tarrant, Inc.; CHMP Manager, LLC; Cambridge B/R, Inc.; Cambridge-Greenville Dallas, LLC; PMC Cambridge of Plano, Ltd.; Cambridge-Crown Atrium LLC; and Cambridge North Texas Holdings, LLC*

Dated: March 5, 2010                    __/s/ Lance V. Clack_____
                                        Lance V. Clack