IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CARE INVESTMENT TRUST, INC., <br><br> Plaintiff, <br><br> -v.- <br><br> JEAN-CLAUDE SAADA, *et al.*, <br><br> Defendants. | No. 3:09-cv-02256-K |
| JEAN-CLAUDE SAADA, *et al.*, <br><br> Counterclaim Plaintiffs, <br><br> -v.- <br><br> CARE INVESTMENT TRUST, INC., *et al.*, <br><br> Counterclaim and Third-Party Defendants. | |

**OPPOSITION OF PLAINTIFF AND THIRD-PARTY
DEFENDANTS TO DEFENDANTS' MOTION TO AMEND THEIR
ANSWER, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINT**

Bobby R. Burchfield (*pro hac vice*)
Jason A. Levine (*pro hac vice*)
McDERMOTT WILL & EMERY LLP
600 Thirteenth Street, N.W.
Washington, D.C. 20005-3096
Tel. 202.756.8000
Fax. 202.756.8087

Ernest E. Figari, Jr.
Texas Bar No. 06983000
FIGARI & DAVENPORT, L.L.P.
3400 Bank of America Plaza
901 Main Street, Suite 3400
Dallas, Texas 75202-3796
Tel. 214.939.2000
Fax 214.939.2090

*Attorneys for Plaintiff and Counterclaim Defendant
Care Investment Trust, Inc.; and for Third-Party
Defendants CIT Healthcare, LLC; Flint D.
Besecker; ERC Sub, LP; and ERC Sub LLC*

Dated: June 18, 2010

## INTRODUCTION

Four months after serving a nearly 60-page Answer and eleven Counterclaims, Defendants now have suddenly remembered that they entered into an oral contract with Plaintiff in October 2009 that moots this entire case and gives Defendants all the relief sought by their current Counterclaims—and more. This contract was so "memorable" that Defendants made no reference to it in their Answer or any of the eleven current Counterclaims. The incredibility of the proposed new Counterclaim, its suspicious timing, and the burdens imposed by its unduly delayed assertion should suffice for this Court to deny Defendants leave to amend. Moreover, because the purported *oral* contract was for the sale of interests in real property but was *not signed in writing*, the proposed amendment is barred by the Statute of Frauds and should be rejected as futile. N.Y. Gen. Obligations L. § 5-703(2); Tex. Bus. & Comm. Code §§ 26.01(a), (b)(4). Finally, the proposed new Counterclaim also lacks a plausible basis in fact, further supporting denial of leave to amend on futility grounds.

## ARGUMENT

The Supreme Court has held that a motion for leave to amend a pleading pursuant to Federal Rule of Civil Procedure 15(a) may be denied when the amendment would be futile, would prejudice the non-moving party, or is unduly delayed. *Foman v. Davis*, 381 U.S. 178, 182-83 (1962). In particular, as Defendants admit (Defs. Br. at 3), a motion for leave to amend *should* be denied if the amended claim would be subject to dismissal. *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 208 (5th Cir. 2009). It is appropriate to deny Defendants' Motion for Leave to Amend on any or all of these grounds.[1]

---

[1] If the Court permits the amendment, Plaintiff Care Investment Trust, Inc. ("Care") and the Third-Party Defendants (collectively with Care, the "Care Parties") intend to move to dismiss the proposed new Counterclaim under Rule 12(b)(6), and reserve the right to proceed against Defendants under Rule 11, for the reasons set forth below.

I.  THE MOTION FOR LEAVE TO AMEND SHOULD BE DENIED AS FUTILE.

   A.  The Proposed New Counterclaim Is Barred by the Statute of Frauds.

Defendants' proposed new Counterclaim (¶¶ 52, 56-57) asserts that the parties entered into a $20+ million *oral* contract for the sale of partnership interests in medical office buildings that the Care Parties somehow repudiated and breached even though the contract was never finalized in writing or signed. Further, Defendants seek specific performance of this purported oral contract (*id*. ¶ 154), even though all of its terms were not ultimately agreed upon. Suffice it to say that the implications of the proposed new Counterclaim are breathtaking. More importantly for present purposes, it is flatly barred by the governing Statute of Frauds.

Written drafts of the purported contract—the so-called Equity Interest Purchase Agreement ("EIPA")—stated that it was to be governed by and construed in accordance with New York law. *Id*. ¶ 59. New York has a Statute of Frauds which expressly provides that a contract for the sale of an interest in real property "is void unless the contract or some note or memorandum thereof, expressing the consideration, is in writing, [and is] subscribed by the party to be charged." N.Y. Gen. Obligations L. § 5-703(2). Accordingly, as New York courts have held in recent cases applying the Statute of Frauds, "[a]n agreement conveying an interest in real property *must be in writing and signed by the party to be charged*." *Holland v. Ryan*, 762 N.Y.S.2d 740, 741 (N.Y. App. Div. 2003) (holding that an alleged oral agreement was "barred by the statute of frauds") (internal citations omitted) (emphasis added); *see also Bowman v. Di Placidi*, 811 N.Y.S.2d 638 (N.Y. App. Div. 2006) (affirming dismissal of claim for breach of oral contract for the transfer of real property because the purported agreement was void under the Statute of Frauds). For this reason, Defendants' proposed new Counterclaim—which rests upon

the parties' alleged *oral* agreement to "material terms" later embodied in the *unfinished and unsigned draft* EIPA—fails under the Statute of Frauds.[2]

It is undisputed that the parties' supposed oral agreement was for the purchase and sale of interests in real property. Defendants allege that they agreed to pay the Care Parties $20 million to reacquire the 85% limited partnership interests in various medical office buildings—real property—that they previously sold for $76 million in the December 2007 transaction that is the main focus of this lawsuit. *See* Defs. Am. Countercls. ¶¶ 30, 52, 56, 57. Indeed, Defendants themselves described the 2007 transaction as involving "interests in the vast majority of the Cambridge Companies' *real property assets*." *Id.* ¶ 30 (emphasis added).

Accordingly, Defendants' claim that the parties had orally agreed to the material terms of the deal that were in draft written form in the unfinished and unexecuted EIPA—which the Care Parties vigorously dispute as a matter of fact—is barred by the Statute of Frauds. Even assuming the truth (contrary to fact) of Defendants' allegations, the purported agreement is void and unenforceable because none of the Care Parties or their agents ever executed a final written contract embodying the agreement. Defendants admit as much, and make no contrary allegation. For this reason, the proposed new Counterclaim is unavailing as a matter of law and the Motion for Leave to Amend should be denied as futile.[3]

---

[2] The outcome is the same under Texas law, which provides that all contracts for the sale of real property must be in writing and signed by the party charged with the agreement. *See* Tex. Bus. & Comm. Code §§ 26.01(a), (b)(4); *see also Fandey v. Lee*, 880 S.W.2d 164, 170 (Tex. App.-El Paso 1994, writ denied) ("Under the statute of frauds . . . a contract for the sale of real property . . . is not enforceable unless the agreement is in writing and signed by the person or his agent against whom enforcement of the contract is sought.").

[3] Texas law permits enforcement of an oral contract for the sale of real property despite the Statute of Frauds under very narrow circumstances, where *all* of the following three conditions are met (and *none* are met here): (1) payment of the consideration, whether it be in money or services; (2) possession by the buyer; *and* (3) the making by the buyer of valuable and permanent improvements upon the land with the consent of the seller, or, without such improvements, the presence of such facts as would make the transaction a fraud upon the buyer if it were not enforced. *U. S. Pipeline Corp. v. Kinder*, 609 S.W.2d 837, 840 (Tex. App.-Fort Worth 1980, writ refused n.r.e.). Again, *none* of these elements are alleged (let alone present) here. Governing New York law, in contrast, does *not*

(continued…)

Defendants cannot escape from the Statute of Frauds by contending in reply that the parties agreed orally to complete the transaction in writing later. New York has long recognized that such an oral agreement would be unenforceable. *See Backus Plywood Corp. v. Commercial Decal, Inc.*, 208 F. Supp. 687, 695 (S.D.N.Y. 1962) (applying New York law, and citing numerous New York state cases); *Peters v. Day*, 210 N.Y.S. 42, 45 (N.Y. Sup. Ct. 1925). Specifically, "the provisions of the statute of frauds may not be evaded on the theory that while the contract itself is unenforceable, the contract to make this contract is valid." *Peters*, 210 N.Y.S. at 45. Under the Statute of Frauds, a party will "escape legal liability" by failing to execute a written agreement, even if he orally agreed to sign the written document. *Id.* A contrary rule "would allow a facile evasion of the statute and the door would be open for the practical nullification of the statute of frauds." *Backus*, 208 F. Supp. at 695 (quotation omitted).[4]

Finally, in reply, Defendants may contend that their alleged transmission of a revised draft EIPA to Care counsel established a binding written agreement, but this argument is also unavailing. *See* Defs. Am. Countercls. ¶ 55. Defendants *admit* that this document was merely a "draft," *admit* that it contained various "proposed changes" to terms, and *do not allege* that it was ever accepted, finalized, or signed by any of the Care Parties. *Id.*; *see generally id.* ¶¶ 51-63. On the contrary, Defendants contend that the Care Parties *rejected* this draft EIPA. *Id.* ¶ 60. Accordingly, even taken as true, the allegations of a revised *draft* written agreement cannot and do not evidence a binding contract for the sale of the interests in real property.

---

recognize such a "loophole" permitting enforcement of oral agreements that are otherwise encompassed by the Statute of Frauds. *See, e.g., R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 75-76 (2d Cir. 1984) (holding that although the parties desired to be bound by an oral agreement, it was void under the Statute of Frauds ).

[4] This is equally true under Texas law. *See Cherry v. Salinas*, 355 S.W.2d 833, 834-35 (Tex. App.-El Paso 1962, writ refused n.r.e.) (oral agreement to later execute a lease of land was void under the Statute of Frauds and could not be enforced by specific performance or by collection of damages for its breach).

### B. The Proposed New Counterclaim Is Also Factually Baseless.

In addition to its legal deficiency, the proposed new Counterclaim also lacks a plausible basis in fact, which further supports denial of leave to amend on futility grounds. The Care Parties briefly describe below the pertinent evidence, which they discussed with Defendants after receiving the Motion for Leave to Amend and before filing this Opposition.[5]

Defendants contend that the parties reached a definitive *oral* agreement on all material terms of the purported real estate transaction at issue as of October 12, 2009, and that the parties' negotiations over a draft EIPA on and after that date reflected only changes to "immaterial" terms that did not affect the binding nature of the oral agreement. *See* Defs. Am. Countercls. ¶¶ 52-53, 55. On the contrary, email correspondence that Defendants omit from their proposed new Counterclaim demonstrates a *mutual* contemporaneous awareness that no binding agreement existed as of October 12, 2009 or any other date.

For example, on October 12, 2009, after the parties had allegedly reached the purported oral agreement on "material" terms, Defendant Jean-Claude Saada emailed the Chairman of the Board of Care, Kirk Gorman. Mr. Saada advised Mr. Gorman that they still needed to discuss multiple "threshold issues" relating to the draft EIPA, including consideration, the connection of the EIPA to a business deal between Care and a third party, proration, and "mutual releases, consents, and general legal concepts" contained in a draft of the EIPA that Care counsel had sent to him three days earlier. Mr. Saada also suggested the parties involve their counsel in this discussion. Mr. Saada's email message, standing alone, undermines Defendants' claim that the

---

[5] As a professional courtesy, counsel for the Care Parties apprised counsel for Defendants of the following evidence in a telephone call on June 2, 2010, and suggested that further factual investigation could well warrant withdrawal of the Motion for Leave to Amend. In a responsive email message on June 6, counsel for Defendants declined—as of that date—to withdraw the Motion. As noted (*supra* note 1), the Care Parties reserve the right to serve Defendants with a motion for Rule 11 sanctions if the Court grants them leave to amend.

parties had orally agreed to the "material terms" of the draft EIPA (let alone *all* of its terms) as of October 12, 2009—especially given the centrality of "consideration" to any contract. *Kowalchuk v. Stroup*, 873 N.Y.S.2d 43, 46 (N.Y. App. Div. 2009); *Angelou v. African Overseas Union*, 33 S.W.3d 269, 278 (Tex. App.—Houston [14th Dist.] 2000, rehearing overruled).[6]

Subsequent email messages from Defendants further disprove their contention that the parties reached an agreement even as of October 27, 2009. *See* Defs. Am. Countercls. ¶ 55. On that day, Defendants' counsel sent Care counsel an email attaching "for your review . . . a *revised draft* of the [EIPA]." In his transmittal message, Defendants' counsel stated that he looked forward to "receiving . . . comments and/or *suggested revisions*," and expressed his hope that the parties "can conclude *our negotiations and execute a final version of the attached Agreement by mid-November*." Three days later, on October 30, 2009, Defendants' counsel sent a follow-up email to Care counsel, stating: "I think we all understand that there are *unresolved monetary issues between our respective clients*. Cambridge *is willing to enter into negotiations to resolve these monetary issues*; however, before it does so, Cambridge would like to be assured that there are no other significant issues to be resolved." These issues, as Defendants admit in their proposed amendment, were *never* resolved. *See* Defs. Am. Countercls. ¶¶ 60, 62-63.

In view of these emails from Defendants, it is implausible, as a matter of *fact*, that the parties could have reached any binding agreement. Coupled with the legal futility of the proposed new Counterclaim under the Statute of Frauds, the Care Parties submit that its factual implausibility reinforces the appropriateness of denying Defendants leave to amend.

---

[6] The email record further reflects that the discussion suggested by Mr. Saada did *not* occur on October 12, 2009.

## II. THE MOTION FOR LEAVE TO AMEND SHOULD ALSO BE DENIED BECAUSE THE PROPOSED NEW COUNTERCLAIM IS UNJUSTIFIABLY DELAYED AND WOULD PREJUDICE THE CARE PARTIES.

Denial of leave to amend is separately and equally appropriate in view of Defendants' inexplicable delay in asserting the proposed new Counterclaim, and the prejudice it would cause to the Care Parties. *Foman*, 381 U.S. at 182-83. Apparently recognizing that there is no legitimate rationale for the timing of their amendment, Defendants do not even attempt to explain why they waited until four months after filing their initial *eleven* Counterclaims to assert the proposed new Counterclaim. Indeed, this is the first time that Defendants have ever mentioned the EIPA in this litigation. It does not appear at all in the Answer, Counterclaims and Third-Party Complaint, even though it was supposedly agreed upon only three months before that pleading was filed.

Defendants' delay is even more questionable given that the EIPA contained a provision *terminating* all of the December 2007 agreements upon which Defendants based their initial eleven Counterclaims (the "Agreements"). *See* Defs. Am. Countercls. ¶ 56. This means that the proposed new Counterclaim would moot every other issue and cause of action in this lawsuit, which all turn on the Agreements. This is less of an "amendment" to the existing Counterclaims and more of a complete—and irreconcilable—change in factual position. Specifically:

- Counterclaims I-IV assert that the Care Parties breached fiduciary duties and duties of good faith and fair dealing that were created by the Agreements. *See* Defs. Am. Countercls. ¶¶ 78-101. Counterclaim V asserts that the Care Parties fraudulently induced Defendants to enter the Agreements (*id.* ¶¶ 89-96), and Counterclaim X seeks indemnification of legal fees based on one of the Agreements. *Id.* ¶¶ 129-32. Likewise, Counterclaims VI-IX seek certain legal constructions of the Agreements, to the benefit of Defendants. *Id.* ¶¶ 110-41.

- Yet, the proposed new Counterclaim seeks *specific performance* of a previously unpleaded contract under which the parties allegedly "agreed to *terminate and release all prior agreements* made in connection with the December 2007 joint venture." *Id.* ¶¶ 56, 58, 153-54 (emphasis added).

If this new factual allegation is true, then *all* of the Agreements would be terminated (*id.* ¶ 56), *none* of Defendants' other Counterclaims would be possible, and the parties will have wasted seven months of time and substantial sums of money litigating them. Accordingly, Defendants' assertion of two directly contradictory sets of facts (and mutually exclusive grounds for relief), coupled with their *delay* in doing so, militates strongly against leave to amend. *Foman*, 381 U.S. at 182-83.

Indeed, given the foregoing, the timing of Defendants' purported amendment is at best suspicious. It can only be viewed as a dilatory effort to exert financial leverage over the Care Parties by interposing a new claim that directly interferes with Care's impending tender offer transaction with Tiptree Financial Partners, L.P. ("Tiptree"). The proposed new Counterclaim appears to be another manifestation of Defendants' ongoing effort—first detailed in Counts IV and V of Care's Complaint—to dictate Care's conduct and interfere with its corporate activities, for the unilateral benefit of Defendants and to the detriment of Care and its public shareholders.

In addition, the proposed new Counterclaim would also impose upon the Care Parties a significant burden of defending against an inconsistent new claim involving events that occurred nearly two years after the Agreements at the center of this case. This burden is a further reason to deny leave to amend. *Foman*, 381 U.S. at 182-83. The proposed new Counterclaim will require additional discovery of facts pertaining to the supposed negotiation over the EIPA. Defendants attempt to minimize the amount of discovery that has already occurred in this case (Defs. Br. at 3-4), but it is substantial. To date, the Care Parties have produced over *200,000 pages* of documents and, although Defendants have produced much less, even they have to date produced over *15,000 pages* of documents. Likewise, non-party Tiptree has produced over *36,000 pages* of documents and non-party Cain Brothers & Company has produced over *3,600*

*documents* (pages not Bates numbered) in response to subpoenas. Nine other subpoenas to non-parties are outstanding, and Defendants will depose the President of Tiptree on July 20, 2010. Adding the proposed new Counterclaim would substantially compound the burdens of this litigation on the Care Parties (and Defendants).

Finally, these burdens would be further exacerbated by the fact that the proposed new Counterclaim—through its pleaded allegations regarding the interplay between outside counsel in negotiating the EIPA—would likely convert certain of the parties' outside counsel into fact witnesses. *See* Defs. Am. Countercls. ¶¶ 51-55. The Fifth Circuit recognizes that this would be unduly burdensome and is disfavored because it "disrupts the adversarial system[,] . . . lowers the standards of the profession, . . . adds to the already burdensome time and costs of litigation[, and] . . . detracts from the quality of client representation." *Nguyen v. Excel Corp.*, 197 F.3d 200, 209 n.26 (5th Cir. 1999) (quotation omitted). This added burden imposed by the proposed new Counterclaim—even if mutually shared by the parties—cannot withstand *Nguyen*, and counsels further in favor of denying leave to amend.

## CONCLUSION

For the foregoing reasons, Care urges the Court to deny Defendants' Motion to Amend its Answer, Counterclaims, and Third-Party Complaint.


Respectfully submitted,

/s/Ernest E. Figari, Jr.

| | |
|---|---|
| Bobby R. Burchfield (*pro hac vice*) | Ernest E. Figari, Jr. |
| Jason A. Levine (*pro hac vice*) | FIGARI & DAVENPORT, L.L.P. |
| MCDERMOTT WILL & EMERY LLP | 3400 Bank of America Plaza |
| 600 Thirteenth Street, N.W. | 901 Main Street, Suite 3400 |
| Washington, D.C. 20005-3096 | Dallas, Texas 75202-3796 |
| Tel.  202.756.8000 | Tel.  214.939.2000 |
| Fax. 202.756.8087 | Fax  214.939.2090 |

*Attorneys for Plaintiff and Counterclaim Defendant Care Investment Trust, Inc.; and for Third-Party Defendants CIT Healthcare, LLC; Flint D. Besecker; ERC Sub, LP; and ERC Sub LLC*

Dated:  June 18, 2010

**CERTIFICATE OF SERVICE**

I, John H. Walker, hereby certify that on this day I caused a true and correct copy of the foregoing Opposition of Plaintiff and Third-Party Defendants to Defendants' Motion to Amend Their Answer, Counterclaims, and Third-Party Complaint to be served upon all counsel named below by electronic case filing using the CM/ECF system, which will send automatic notification of the filing to the following:

>Richard A. Rosen
>James L. Brochin
>PAUL WEISS RIFKIND
>   WHARTON & GARRISON LLP
>1285 Avenue of the Americas
>New York, N.Y. 10019
>
>Robert M. Cohan
>William D. Ellerman
>JACKSON WALKER L.L.P.
>NationsBank Plaza
>901 Main Street, Suite 6000
>Dallas, TX 75202
>
>*Attorneys for Defendants and Counterclaim Plaintiffs Jean-Claude Saada; Cambridge Onalp, Inc.; Cambridge Nassau Bay GP LLC; 6000 Greenville, Inc.; Allen MOP, Inc.; 5280 Medical Drive, Inc.; Cambridge Gorbutt MOB, Inc.; Cambridge Tarrant, Inc.; CHMP Manager, LLC; Cambridge B/R, Inc.; Cambridge-Greenville Dallas, LLC; PMC Cambridge of Plano, Ltd.; Cambridge-Crown Atrium LLC; and Cambridge North Texas Holdings, LLC*

Dated: June 18, 2010          /s/ John H. Walker
                                            John H. Walker